UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :
                                                                   :
                                   Plaintiff,    :
                                                                  :      02 Civ. 9046 (HB)
          - against -    :
                                                                  :      <u>OPINION & ORDER</u>
800AMERICA.COM, INC., DAVID ELIE RABI,    :
        a/k/a ELIE RABI,    :
        a/k/a ELIE RABIE,    :
        a/k/a EDWARD RABIE,    :
        a/k/a ELIAS RABBIAH,    :
        a/k/a EDUARDO RABIE,    :
        a/k/a ROBERT ALESI,    :
        a/k/a WALTER ARBIB,    :
        a/k/a JACK BENDER, and    :
TILLIE RUTH STEEPLES,    :
        a/k/a TILLIE RUTH WALLEY    :
        a/k/a RUTH WALLEY    :
                                                              :
                              Defendant.    :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

       Tillie Ruth Wallie Steeples, a/k/a Tillie Ruth Walley, a/k/a Ruth Walley ("Steeples" or "Defendant"), proceeding *pro se*, moved to dismiss a SEC civil enforcement complaint that alleged various violations of the securities laws. Her motion was premised on the fact that her co-defendant David Rabi ("Rabi") reportedly made exculpatory statements to a prison chaplain after his conviction that established her innocence. She later added a claim of improper venue (stylized as a "Challenge of Jurisdiction" motion), pursuant to 28 U.S.C. § 1746. The SEC opposed Defendant's motion to dismiss, moved for summary judgment and requested that this Court grant the following relief: permanently enjoin Steeples against committing future violations of the securities laws, disgorge all her illegally obtained profits and order payment of prejudgment interest on the illegally gained funds, provide for entry of civil penalties, order a penny stock bar as well as an officer and director bar, and impose other appropriate civil penalties the Court deems just and appropriate. For the reasons set forth below, the Defendant's

---

[1] Elizabeth Lash, a Summer 2006 intern in my Chambers and a third-year law student at Ohio Law School, as well as Lucas Charleston, a Fall 2006 intern in my Chambers and a second-year law student at New York Law School, provided substantial assistance in the research for this Opinion.

motion to dismiss is DENIED.  The Government's motion for summary judgment is GRANTED.

## I.      PROCEDURAL HISTORY

On November 11, 2002, the U.S. Attorney's Office indicted Steeples and Rabi (collectively "Defendants") for conspiracy to commit securities fraud, to file false reports with the SEC, to falsify books and records, to make false statements to accountants, to falsely certify the accuracy of a filing with the SEC, to commit mail fraud, and fraud in connection with the purchase and sale of securities.  The criminal case was assigned to Honorable Miriam Cedarbaum.

Shortly thereafter, on November 13, 2002, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against the Defendants based on the same events.  The case was originally assigned to Judge John S. Martin but following his resignation, re-assigned to me on July 23, 2003.  The civil suit against Steeples alleges that she, alone and in concert with David Rabi, committed 1) securities fraud in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10-b-5, 2) registration violations of Section 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), and 3) reporting violations of Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.  The SEC also charged Steeples with making materially false and misleading statements to 800America.com, Inc.'s ("800America.com," or "Company") accountant in violation of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.  Last, the SEC alleges that Steeples is either liable as a control person or for aiding and abetting 800America.com to commit violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), Section 13(b)(2) of the Exchange Act, 15 U.S.C. §78m(b)(2), as well as Rules 12b-20 and 13a-1, 17 C.F.R. §§ 240.12b-20, 240.13a-1.  In March 2003, Judge Martin stayed the civil action pending the outcome of the criminal case.  The stay was lifted on Dec. 21, 2005.

Rabi, Steeples' co-defendant in the criminal action, was indicted in a two-count indictment and convicted after trial on both counts.  <u>United States v. Rabi and Steeples</u>, 03 CR 082 (S.D.N.Y. Sept. 16, 2005).  He passed away in prison.[2]

Steeples pled guilty to both counts before Judge Cedarbaum on September 18, 2005.  <u>See</u>

---

[2] Rabi died in prison on or about November 10, 2005.  <u>See</u> Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem.") at 1–2 (Mar. 20, 2006).

Judgment in a Criminal Case ("Judgment"), Ex. 11 to Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") (Apr. 21, 2004). Steeples was sentenced to 70 months imprisonment and 2 years supervised release, and ordered to pay restitution in the amount of $9,147,617. Id.

## II.     FACTUAL BACKGROUND

The complaint alleges the following facts. In July 1999, World House Entertainment, a publicly registered shell company controlled by Rabi, Steeples or both, issued one million shares of restricted common stock in a reverse merger to acquire all of the issued and outstanding common stock of 800America, Inc. and renamed the corporation 800America.com, Inc. Complaint ("Compl.") at ¶¶ 15, 29, Ex. 2 to Pl's Mot. 800America.com held itself out as an Internet retailer that, *inter alia*, sold clothing and connected customers to other internet retailers. Id. at ¶ 16. 800America.com reported having ten subsidiaries: InShop.com, Internet Web Guide Magazine, Inc., Rothman Closeouts, Fileshooter.com, Inc., Ebiz4Biz.com, IRSpayment.com, cs-live, Igain, Inc., YouTopia.com, and One Two Click. Id. The common stock was registered with the SEC and traded on the over-the-counter ("OTC") Bulletin Board. Id. at ¶ 15.

For most of the period from July 1999 through January 2002, Rabi served as President, Chief Executive Officer, Chief Financial Officer, Director, and majority shareholder of 800America.com. Id. at ¶ 17. The SEC alleges that Steeples served as a Secretary or other undisclosed control person of 800America.com during this time period, although Steeples denies this. Id. at ¶ 18; See also Affidavit of Tillie Steeples ("Steeples Aff.") at ¶¶ 3, 11, 33, 37–38 (May 18, 2006).

800America.com attracted investors by issuing artificially inflated financial statements about the company. Compl. at ¶ 2, Ex. 2 to Pl.'s Mot. Allegedly, its public filings were created from falsified bank statements, general ledgers and invoices. Id. Furthermore, 800America.com failed to disclose to the SEC and to investors that the majority of 800America.com's officers, directors, and employees had either left the company or were otherwise unavailable. The Company also did not disclose that Steeples' had a prior felony conviction and the Company published press releases that misrepresented Rabi's status as a convicted felon. Id. at ¶ 41 - 45.

800America.com filed an S-8 securities offering with the SEC pursuant to an employee benefit plan. Id. at ¶ 30. Rabi and Steeples, as alleged control persons, were restricted from re-selling the shares. That fact notwithstanding, the complaint alleges that they sold these shares to the public through Internet brokerage accounts (the "nominee accounts"), under Steeples' name

and the names of 13 other individuals who were unaware of the existence of these accounts.  Id. at ¶ 29–31.  At the time the complaint was filed, it was alleged that Rabi and Steeples had sold at least 1,188,150 shares of 800America.com stock to the public, either through shares issued through the S-8 offering or obtained through the reverse-merger with World House Entertainment.  Id.  Steeples disputes this and instead asserts that the shares she received were pursuant to 800America.com's employee benefit plan.  Steeples Aff. at ¶¶ 3, 11, 33, 37–38 (May 18, 2006).

800America.com's activities ended when Judge Martin granted the SEC's temporary injunction against the Company on December 2, 2002.

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, the movant on a motion for summary judgment, such as the SEC motion here, must establish that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986).  The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  A disputed issue of material fact alone is insufficient to deny a motion for summary judgment, the disputed issue must be "material to the outcome of the litigation," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In ruling on a summary judgment motion, the Court resolves all ambiguities and draws all inferences against the moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).  The Defendant is proceeding *pro se*; therefore, the pleadings must be construed more leniently than pleadings submitted by a practicing attorney.  See, e.g., Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (giving "special solicitude" to *pro se* litigants when served with summary judgment motions).

Turning first to Steeples' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the movant must establish that the plaintiff failed to "state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In ruling on a Rule 12(b)(6)

motion, this Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47–48 (2d Cir. 2002). A motion to dismiss, such as the Steeples motion here that asserts her innocence, may not be granted "unless it appears beyond doubt that the [movant] can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The SEC claims that Steeples is collaterally estopped from asserting her innocence in this civil proceeding based on her previous guilty plea to one count of conspiracy and one count of securities fraud. A defendant may be estopped from denying his or her guilt in a civil suit if he or she has already been criminally convicted, either by a guilty plea or by a jury trial. United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978). To rely on this doctrine, the following four-part test must be satisfied: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issue must have been necessary to support a valid and final judgment on the merits. SEC v. Monarch Funding Corp., 192 F.3d 295, 304 (1999). Where there is a plea allocution, as in this case, the court must examine the plea allocution to make this determination. See SEC v. McCaskey, No. 98 Civ. 6153, 2001 WL 1029053, at *3–4 (S.D.N.Y. Sept. 6, 2001).

## IV. DISCUSSION

As a preliminary matter, Steeples disputes the voluntary nature of her plea allocution. Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem.") at 1–2 (Mar. 20, 2006). Although defendants may challenge the voluntariness of their guilty plea via, *inter alia*, a habeas petition, see, e.g., Vasquez v. Filion, 210 F.Supp.2d 1994 (E.D.N.Y. 2002), or a motion to vacate the sentence, see, e.g., Hernandez v. U.S., 839 F.Supp. 140 (E.D.N.Y. 1993), Steeples is not permitted to do so here. In fact, at her plea allocution, Steeples stated that she understood the consequences of a guilty plea and was ready to voluntarily plead guilty to the crimes she was charged with.

> The Court: Ms. Steeples, after our discussion, after our extended discussion, I am satisfied that you understand the consequence of entering a plea of guilty.
>
> The Defendant: Yes, ma'am.

> The Court: And that you are entering this plea of your own free will because you are, in fact, guilty of the crimes with which you are charged. So I am going to ask you with respect to indictment 02 Crim 082, how do you plead with respect to Count One?
>
> The Defendant: Guilty.
>
> The Court: And how do you plead to Count Two?
>
> The Defendant: Guilty.

Ex. 9 to Hanson Decl. at 46:7-19.[3]  Thus, Steeples' motion to dismiss will not be granted on this basis.

**A. Procedural Claims**

*1. Rabi's Conversation with the Prison Chaplain*

Steeples asserts that Rabi made a dying declaration to a prison chaplain that absolved her of all responsibility for the events that led to her indictment. As a result, these statements should be admissible to support her innocence in this civil proceeding. Def.'s Mem. at 1–2; see Affidavit of Reverend Winston Cato, Pastor of the Shekinah Outreach Ministry, Inc. ("Cato Aff."), Ex. A to Def.'s Mem.

Rule 804(b)(2) exempts a declarant's statements from the hearsay rule when the declarant believes that he or she faces imminent death, and the statement concerns the circumstances or cause of his or her death. FED. R. EVID. 804(b)(2). Rabi is an unavailable witness because he died in prison. FED. R. EVID. 804(a)(4). However, Rabi neither stated that he believed that his death was imminent, nor that he believed that Steeples' actions were the direct or indirect cause of his death, thus this exception does not apply. See Cato Aff., Ex. A to Def.'s Mem.

Nor would Rabi's statements be admitted under Rule 804(b)(3). Hearsay statements are admissible under Rule 804(b)(3) when the statement would subject a declarant to civil or criminal liability, or would so threaten a person's financial or property interests. Under those circumstances, the statement is deemed reliable. See FED. R. EVID. 804(b)(3). However, when the hearsay statement is made by a co-conspirator, the statement is not admissible without

---

[3] Even if that was not the case, Steeples would face an uphill battle as she must overcome the strong presumption that guilty pleas are entered into voluntarily. See, e.g., U.S. v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (finding that the district court did not abuse its discretion when it held that the defendant's plea was voluntary when the defendant's "unequivocal admissions under oath contradict[ed] later assertions of coercion.").

6

corroborating evidence to confirm the reliability of the statement. United States v. Marquez, 462 F.2d 893, 895 (2d Cir. 1972) (finding that statements made merely to exculpate one's friends does not meet the inherent reliability test required for the Rule 804(b)(3) hearsay exception). Steeples has submitted no evidence to corroborate Rabi's exculpatory statements. Thus, Steeples cannot rely on this exception to the hearsay rule to establish her innocence.

*2. Venue*

Steeples also contends that the Southern District of New York ("SDNY") is not the proper venue to try this civil action because the allegations against her arose solely out of her activity in Tennessee. For the reasons set forth below, I disagree and find that venue is properly laid in the SDNY.

Under the Securities Act of 1933 and the Securities Exchange Act of 1934, securities law claims are exclusively controlled by the special venue provisions of 15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa, respectively. S.S.T. Global Technology v. Chapman, 270 F.Supp.2d 444, 452 (S.D.N.Y. 2003). Under the special venue provisions of those Acts, a claim may be brought by the SEC either "(1) in the district wherein any act or transaction constituting the violation occurred or (2) in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa; see also 15 U.S.C. § 77v(a) (stating same standard). Given the nature of securities fraud actions, it is well-established that the special venue provisions should be liberally construed. See e.g. First Federal Sav. & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 634 F.Supp. 1341, 1350 (S.D.N.Y. 1986); Steinberg & Lyman v. Takacs, 690 F.Supp. 263, 267 (S.D.N.Y. 1988) (internal quotation and citation omitted) (stating that "any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue.").

The SEC, among other things, alleges that Rabi and Steeples conspired to commit securities fraud. In cases that allege a common scheme to commit violations of federal securities law, any act or transaction within a district by a participant in furtherance of the scheme establishes venue as to any other person who "knowingly participated" in the scheme. That is the case here.

Rabi orchestrated part of the 800America.com scheme from the company's executive office in New York. Ex. 9 to Hanson Decl. at 44:20-25. While in New York, he, *inter alia*, mailed false bank statements to Steeples in Tennessee, which were used to generate false

financial reports and procure investors.  Id. at 43: 6-17, 44: 20-25.  Rabi's acts in New York were in furtherance of the 800America.com conspiracy, and thus, establish an independent basis for venue in the Southern District of New York.  See e.g. Gordon v. Hohman, 434 F.Supp. 629, 631 (D.C.N.Y. 1977) (maintaining an office in the District from which literature, documentation, and financial reports were sent in furtherance of fraud sufficient for proper venue).

      Steeples also "knowingly participated" in the 800America.com scheme.  Steeples admitted in her plea allocution[4] that she was aware that she engaged in fraud and misrepresentation when she performed acts for Rabi and 800America.com.

> The Court: You really did believe that [Rabi] was cheating?
>
> The Defendant: Yes ma'am, I did.  I had no idea what the scope was or how it worked, but I knew it was wrong.
>
> The Court: But you recognized that what you were giving the accountant was a part of it?
>
> The Defendant: Yes, ma'am, I did.
>
> The Court: And/or was helping it along, let's put it that way.
>
> The Defendant: I realized I was a big part o[f] it.  I realized that I was a very big part of it.

Ex. 9 to Hanson Decl. at 23:18-25, at 24:1-3.  Steeples also admitted that she knew the false financial reports were used to mislead investors as to the value of the Company.

> The Defendant: I did give financial statements to the accountant that were untrue, that I knew were untrue.
>
> The Court:  And did you know that those financial statements were being sent –
>
> The Defendant: Yes.
>
> The Court: – to people who were considering investing in 800[America.com] stock and who proceeded to rely on those financial statements as a reason for investing in 800[America.com] stock?

---

[4] Although Steeples argues that since she has appealed her conviction, her admissions in her plea allocution cannot be used on the issue of venue, this argument is without merit.  It is well-established that unless Steeples' conviction is reversed, her plea allocution may be utilized on a motion for summary judgment.  See S.E.C. v. Namer, 2004 WL 2199471, at *8 (S.D.N.Y. Sept. 30, 2004) (citing U.S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO, 905 F.2d 610, 621 (2nd Cir. 1990)).

>The Defendant:  Yes, ma'am.  I did
>
>The Court:  And that's what Rabi asked you to do and you went right ahead and undertook to do it?
>
>The Defendant:  That is correct.

Id. at 43: 6-18.  Accordingly, based on the above, Steeples is clearly a co-conspirator and venue is proper in the Southern District of New York.

Steeples argues that the co-conspirator venue standard is inapplicable here since she is the only defendant that remains in the present case.  However, Steeples' argument misses the point.  As I noted above, the present civil action was filed on November 13, 2002 against Rabi, Steeples, and 800America.com.  The law of conspiracy permits, on these facts, venue in the Southern District of New York.  Rabi's death doesn't destroy or diminish his activity in New York to defraud investors in 800America.com nor the alleged conspiracy between him and Steeples to defraud 800America.com investors.  Thus, venue is proper here and this branch of the Defendant's motion is denied.

## B.  Securities and Exchange Act Claims

Turning to the SEC's motion for summary judgment, preliminarily I note that Steeples is charged with several claims that rely on her status as a control person of 800America.com.  Section 20(a) of the Exchange Act posits control person liability as follows:

>Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.  To establish a *prima facie* case of control person liability, the Government must demonstrate 1) primary violation by the controlled person, 2) control of the primary violator by the Defendant, and 3) that the Defendant was a "culpable participant[] in the fraud perpetrated by [the] controlled person[]."  S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) (internal citations omitted).  If the Government sets forth a *prima facie* case, the burden shifts to the plaintiff to demonstrate that he or she acted in good faith.  See, e.g., Marbury Mgmt. Inc. v. Kohn, 629 F.2d 705, 716 (2d. Cir. 1980).  The SEC argues that Steeples was a control person of 800America.com.

9

Control of the primary violator is shown if the defendant had "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2; See also SEC v. Netelkos, 592 F.Supp. 906, 913 (S.D.N.Y. 1984). Influence over the day-to-day activities of the company is not enough. See In re Alstom SA, 406 F.Supp.2d 433, 487 (S.D.N.Y. 2005) ("Thus, exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)."). Although there is some question as to whether Steeples admits to sufficient facts in her plea allocution to collaterally estop her from litigating her control person liability, the SEC presents ample support on this score so that no genuine issue of material fact remains for trial.

Serving as an officer in a company weighs in favor of imposing control person liability. Although Steeples was not listed as a Secretary of the organization on company documents, Declaration of Laura Yeu ("Yeu Decl.") at ¶ 61, Ex. 1 to Hanson Decl. (stating that Bobby Walley is Secretary and Director of 800America.com on the December 31, 2001 Form 10-KSB filing), she represented herself as such. The record contains documents where Steeples signed, her own name and her alias "Ruth Walley," as Secretary of 800America.com. Yeu Decl. Appendix, Ex. 109. Further, although she claims that Rabi forged her signature as Secretary on Company documents, ex. 9 to Hanson Decl. at 4:4-22, these assertions are not corroborated, nor, based on the documents I have in front me, do they appear credible.

The SEC further argues that Steeples exerted sufficient command over the operations of 800America.com to qualify as an undisclosed control person of the Company. I agree.

First, the record includes copies of account opening documents with Steeples' signature on them as well as corporate resolutions that grant Steeples broad control over the bank accounts of two 800America.com subsidiaries.[5] As a result, she had the authority to direct and manipulate the finances associated with the Company. In fact, during her plea allocution, she admitted, in the language that follows, to falsifying these statements and providing the doctored records to 800America.com's accountant:

> The Defendant: [Rabi] would give me a bank statement and it wouldn't have the number of bank deposit slips, it would be

---

[5] Again, although Steeples claims that Rabi forged her signature to these documents, the record does not support her claim.

10

> missing bank deposit slips, and he would ask me to make them up, which I did because they were on the bank statement, they were in his general ledger, so I would make them up and it was after the fact. And then I made copies of them and sent them to the CPA.

Ex. 8 to Hanson Decl. at 11:17–23. Further, and most telling, she admits her position allowed her to stop the fraudulent activity but she chose to do nothing.

> The Court: So he [the accountant] may have well been in the process of preparing another set when you discovered it was false?
>
> The Defendant: Yes, ma'am.
>
> The Court: So you could have stopped him?
>
> The Defendant: Yes, ma'am. I could have and I didn't. It was within my power to stop it and I did not stop it.

Ex. 9 to Hanson Decl. at 23:6-13.

In conclusion, the SEC has submitted documentary evidence, none of which was rebutted by the Defendant, to establish that Steeples served as a control person of 800America.com.

*1. Securities Fraud Violations: Rule 10b-5, § 10(b), & § 17(a)*

Proof of a Section 10(b) and Rule 10b-5 violation supports liability under Section 17(a) of the Securities Act. See SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (1999) (internal citation omitted). To demonstrate a Section 10(b) and Rule 10b-5 violation, the plaintiff must show that the defendant, with scienter: 1) engaged in a scheme to defraud; 2) in connection with the purchase or sale of a security; 3) by use of an instrumentality of interstate commerce such as the mails or wires. SEC v. Softpoint, Inc., 958 F. Supp. 846, 862 (S.D.N.Y. 1997). Collateral estoppel bars Steeples from litigating these claims here.

The issues in this civil action are identical to those in the prior criminal proceeding. In the criminal action, Steeples was charged with fraud in connection with the purchase and sale of securities. She is charged with the same violations here.

Steeples admitted that she knowingly committed fraud, and willfully ignored the illegality of the scheme in which she was a participant. This is enough to satisfy the scienter element of a securities fraud violation.

> The Court: When you saw those bank statements were untrue, that what you had given the accountant was false, was not authentic, was phony, did

11

> you try to get in touch with the accountant . . . to change what he was doing?
>
> The Defendant: No, ma'am I did not. I am responsible. I did not do that.

Ex. 9 to Hanson Decl. at 21:19–25 – 22:1.

Second, she engaged in a scheme to defraud investors and this fraud was committed in connection with the purchase or sale of securities. Steeples allocated to her failure to disclose material information to investors, which included submitting falsified earnings revenues to the accountant. Ex. 8 to Hanson Decl. at 11:17–23. Failure to reveal information about the revenue of the company qualifies as material misrepresentations and omissions under Rule 10b-5. Basic Inc. v. Levinson, 485 U.S. 224, 233–36 (1988) (finding that materiality is a flexible definition but essentially that companies must fully and accurately disclose information that could influence a company's financials). Further, she was aware that investors relied and made investment decisions based upon the falsified financial documents she provided to the accountant.

> The Court: Did you understand that there were people who would rely on the accuracy of those documents [the audited financial statements]?
>
> The Defendant: Yes, ma'am.
>
> The Court: Who would make investments based on them?
>
> The Defendant: Yes, ma'am. I did.
>
> The Court: That you did. And at some point that that was not an accurate statement of the finances of the company?
>
> The Defendant: I think I did. I think I did.

Ex. 9 to Hanson Decl. at 15:7–24. And even though she was in a position to stop the fraud, she did nothing. Ex. 9 to Hanson Decl. at 23:6-13.

Last, Steeples admitted that she mailed the false bank statements to the accountant, satisfying the last prong of a Rule 10b-5 violation, which requires the use of an instrumentality of commerce to conduct the fraud. Ex. 8 to Hanson Decl. at 10:16–23. In short, Steeples established her liability pursuant to Rule 10b-5 and § 10(b) of the Exchange Act and § 17(a) of the Securities Act at her plea.

Steeples had a full and fair opportunity to litigate this matter in the prior proceeding. Steeples was represented by counsel and Judge Cederbaum explained in detail that she had the option to go to trial in lieu of pleading guilty. Id. at 3:16-4:9. In fact, the plea allocution was adjourned to give Steeples additional time to think about whether she wanted to plead guilty to the charges against her. Id. at 17:12–25-18:1.

Two days later, she stated to her counsel, to the prosecutor, and to Judge Cederbaum that she was ready to plead guilty and that she would do so knowingly and voluntarily. Ex. 9 to Hanson Decl. at 46:7–19. Consequently, Steeples is collaterally estopped from re-litigating any issue with regard to Rule 10b-5, Section 10(b), and Section 17(a) and her admissions are sufficient to grant summary judgment as to these claims.

### 2. Registration Violations: Sections 5(a) and 5(c) of the Securities Act

Section 5(a) prohibits the sale of a security through interstate commerce or the mails, unless a registration statement is in effect as to the security. 15 U.S.C. § 77(e)(a). Pursuant to Section 5(c), the same prohibition applies with respect to an offer to sell a security. 15 U.S.C. § 77(e)(c). These provisions only apply to transactions by an issuer, underwriter, or dealer. 15 U.S.C. § 77(d)(1).

To establish a *prima facie* Section 5 violation, the SEC must show that 1) the defendant offered to sell or sold a security, 2) did so through the use of mails or interstate commerce, and 3) no registration statement was filed or was in effect as to that security. See S.E.C. v. Cavanagh, 445 F.3d 105, 111 n. 13 (2d Cir. 2006). If the Government is able to set forth a *prima facie* case, the burden shifts to the Defendant to demonstrate exemption from the provision. The SEC charges that Steeples violated Sections 5(a) and 5(c) of the Securities Act because she was an affiliate of the issuer (in other words, a control person) and sold 800America.com shares to the public.

The *prima facie* case is satisfied here. It is undisputed that Steeples sold some of her 800America.com stock via an online E-Trade account, although a registration statement was not filed with respect to those shares. See, e.g., Yeu Decl. Appendix, Ex. 59 (account statement that shows that 800America.com shares were sold between January 14, 2002 and August 6, 2002 for $463,419.41). At her plea allocution, Steeples admitted that she redeemed her stock options for two dollars per share, double her purchase price. Ex. 9 to Hanson Decl. at 11:25-12:6. She sold her shares, although she admits that she knew the stock "wasn't worth anything." Id. at 34:3-5.

As set forth above, Steeples was a control person of 800America.com and as a control person, she is treated as an issuer of securities. 15 U.S.C. §77(d); See also S.E.C. v. Cavanagh, 155 F.3d 129, 134 (2d Cir. 1998). Thus, an exemption does not apply. Accordingly, no issue of material fact exists and summary judgment is also granted as to this claim.

### 3. *Corporate Reporting, Recordkeeping and Internal Control Violations: Section 13(a), Rules 12b-20, 13a-1 and Section 13(b)(2) of the Exchange Act*

The SEC also asserts that Steeples is liable as a control person, or in the alternative, as an aider and abettor of 800America.com,[6] for periodic corporate reporting violations pursuant to Section 13(a) of the Exchange Act, Rules 12b-20 and 13a-1 as well as for corporate record keeping and internal control violations pursuant to Section 13(b)(2) of the Exchange Act. As a public company registered with the SEC, issuers of 800America.com shares must file periodic and accurate reports with the SEC that are not misleading. Under either theory of liability, I find that no genuine issue of material fact remains for trial.

The SEC has submitted sufficient documentation that demonstrates that 800America.com violated the reporting as well as recordkeeping requirements. Chief amongst the SEC's submissions on this score are numerous financial documents falsified by Steeples. In one instance, an actual March 2001 bank statement for 800America.com's account at Wilson Bank indicates $111,500 in deposits, $113,577.99 in debits, a previous balance of $5,685.74, and an ending balance of $3,607.75. In contrast, 800America.com's auditor received a falsified March 2001 bank statement for 800America.com's account at Wilson bank that reported markedly inflated figures. This statement indicated $1,191,938 in deposits, $1,428,590.31 in debits, a previous balance of $877,314.74 and an ending balance of $640,662.43. Yeu Decl. at ¶ 13, Ex. 1 to Hanson Decl.

Accordingly, there is sufficient evidence in the record to support the SEC's claim that Steeples is liable for corporate reporting, recordkeeping, and internal control violations as both a control person and as an aider and abettor of 800America.com, to grant summary judgment as to

---

[6] The aider and abettor liability standard is set forth in Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e). Under this section, the plaintiff must demonstrate: 1) a securities law violation by a primary wrongdoer; 2) knowledge of the violation by the person sought to be charged; and 3) substantial assistance in the wrongdoing by the person charged. Armstrong v. McAlpin, 699 F.2d 79, 91–92 (2d Cir. 1983). In this case, 800America.com is the primary wrongdoer. See 15 U.S.C. § 78c(a)(9) ("The term 'person' means a natural person, company, government, or political subdivision, agency, or instrumentality of a government.").

all of these claims.

### 4. Reporting Requirement Violations: Rule 13b2-2, Section 13(b)(5), and Rule 13b2-1 of the Exchange Act

*a. Exchange Act Rule 13b2-2*

Under Rule 13b2-2(b)(1), liability attaches when it is shown that someone acting under the direction of an officer or director contributed to the issuance of materially misleading financial statements. Steeples was charged with and pled guilty to, *inter alia*, falsifying books and records as well as submitting false financial statements to accountants. She admitted in her plea allocution that Rabi, an officer and a director of 800America.com, told her to create and provide false bank statements to 800America.com's accountant. Ex. 8 to Hanson Decl. at 10:16–23, 11:17–23. This is enough to satisfy Rule 13b2-2.

Steeples had a full and fair opportunity to litigate this issue in the criminal action and her admissions during the plea allocution were necessary to support a valid and final judgment on the merits. Thus, Steeples is collaterally estopped from re-litigating this issue here and summary judgment is granted.

*b. Section 13(b)(5) and Rule 13b2-1 Violation*

To prove a Section 13(b)(5) and Rule 13b2-1 violation, the SEC must demonstrate that Steeples knowingly circumvented or failed to create and maintain a system of internal accounting controls, or alternatively, that she knowingly falsified the books, records, or accounts of 800America.com. Steeples admitted that she falsified bank statements and that she subsequently provided the falsified documents to the accountant. Ex. 8 to Hanson Decl. at 11:17–23. This is enough to demonstrate both a Section 13(b)(5) and Rule 13b2-1 violation. Summary judgment is granted as to these claims too.

### C.  Requested Relief

### 1.  *Permanent Injunction Against Future Violations of the Securities Laws*

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), allow the SEC to obtain permanent injunctive relief against future violations of the securities law. The SEC requests that relief here. To satisfy their burden, they must show that a securities violation occurred and that there is a reasonable likelihood that violations will occur in the future. See S.E.C. v. First Jersey Secs., Inc., 101 F.3d 1450, 1477 (2d Cir. 1996), cert. denied, 522 U.S. 812 (1997). The SEC has carried their burden with respect to establishing a violation of the securities law. However, they have failed to present sufficient

evidence to indicate that Steeples is likely to violate the securities laws again.

The Court weighs a variety of factors to determine whether a permanent injunction will issue. They include 1) the degree of scienter involved, 2) the isolated or repeated nature of the violations, 3) the defendant's recognition of the wrongful nature of her conduct, and 4) whether, because of the defendant's professional occupation future violations could be anticipated. S.E.C. v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998).

Although Steeples was a knowing participant in the fraud committed by 800America.com, it does not appear that she initiated the fraud. In fact, she maintains that she acted at the behest of her co-defendant Rabi, who is unlikely to enlist her services in the future. Her protestations appear credible, prior to her association with Rabi, there is no record that she had ever violated any securities laws. Further, her plea at the least suggests a recognition of her wrongful conduct. Since the SEC has failed to demonstrate that there is any risk of future violation or that this is more than an isolated incident, albeit hardly aberrational, the request at this time for a permanent injunction is denied.

### 2. Disgorgement and Prejudgment Interest

The SEC requests disgorgement of the proceeds in the amount of $2,731,760.27, reduced by any amount paid pursuant to the restitution order in the parallel criminal case. I find that this amount appears to be a reasonable approximation of the gains Steeples received as a result of her wrongful conduct in this case and the Defendant has not contested this calculation, disgorgement is ordered in the amount of $2,731,760.27. See S.E.C. v. Cavanagh, 445 F.3d 105, 116 (2d Cir. 2006) (finding that the proceeds of the fraud are an appropriate measure for disgorgement). To the extent possible, this money should be directed toward compensating the victims whom Steeples and Rabi defrauded.

The SEC also requests that I award prejudgment interest in this case. A district court has broad discretion to determine whether to grant prejudgment interest on disgorgement funds and the rate to use if such interest is granted. See First Jersey Secs., Inc., 101 F.3d at 1476. Steeples knowingly engaged in a scheme to defraud the public and pled guilty to such conduct, thus an award of prejudgment interest that deprives her of the time value of her unlawful gains is appropriate here. Accordingly, I direct that the Clerk of Court calculate prejudgment interest on the disgorgement amount of $2,731,760.27 from the date the complaint was filed, November 13, 2002. The Internal Revenue Service ("IRS") underpayment rate, the rate at which money is

16

borrowed from the government,[7] should be utilized.

### 3. Civil Penalties

The SEC also requests that I impose the maximum civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78(u)(d).[8]  In order to do this, not only must the violation "involve[] fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" but the violations should "result[] in substantial losses or create[] a significant risk of substantial losses to other persons."  15 U.S.C. §§ 77t(d) and 78u(d).

The civil penalty assessed is a fact-specific determination and the facts here do not merit the maximum penalty.  Although the Defendant knowingly engaged in the fraud, it appears that she was influenced to enter and continue the scheme by her co-conspirator.  She also cooperated with the Government, at least to the extent of a guilty plea, which mitigates, to some extent, the egregiousness of her conduct.  Consequently, I decline to heap additional penalties on the head of an already drowning defendant.  The concept the SEC might think more about is that justice, even viewed from the perspective of a prosecutor, prospers on evenhandedness.

### 4. Penny Stock Bar

The SEC also requests that I bar Steeples from participating in any offering of penny stock.[9]  Steeples was a significant participant in the financial fraud of 800America.com and

---

[7] See 26 U.S.C. § 6621(a)(2) (establishing guidelines for the underpayment rate).

[8] The Securities Act and the Exchange Act set up three tiers of penalties – first tier, second tier, and third tier – set forth below.

> First-tier penalties – penalty "shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation."  15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3)(B)(i).
>
> Second-tier penalties – penalty "shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of this violation, if the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  15 U.S.C. § 77t(d)(2)(B); 15 U.S.C. § 78u(d)(3)(B)(ii).
>
> Third tier penalties – court can impose a penalty up to $120,000 for a natural person (or $500,000 for any other person) or the gross amount of the defendant's pecuniary gain, whichever is greater.  15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii).

[9] Penny stocks are "low-priced, highly speculative stocks generally sold in the over-the counter . . . market and generally not listed on an exchange." Koch v. S.E.C., 177 F.3d 784, 785 n.1 (9th Cir. 1999) (citation omitted).  The 800America.com securities sold by Steeples and Rabi were sold for less than $5

while there is no indication that she has done this before and the driving force behind the fraud is unlikely to influence her in the future, I will impose a penny stock bar on Steeples, but only for a period of five years following her release from prison.

### 5. *Officer and Director Bar*

SEC requests that I impose a permanent officer and director bar. This request is granted. Although Steeples was not formally listed as an officer of 800America.com, she held herself out as Secretary of the Company and exhibited significant control over the finances and day-to-day activities of the Company. In that capacity, she falsified financial documents that she knew would be disseminated and used by investors to make investment decisions with respect to the Company. This is sufficient to show that she was and is unfit to serve as an officer of a public company. See also S.E.C. v. Drexel Burnham Lambert Inc., 837 F.Supp. 587, 613 (S.D.N.Y. 1993) (stating that officer and director bars are especially appropriate where "a defendant has engaged in fraudulent conduct while serving in a corporate or other fiduciary capacity.").

## V.   CONCLUSION

In sum, the defendant's motion to dismiss is denied and the Government's motion for summary judgment is granted. The Defendant is barred from serving as an officer or director of a public company and from offering penny stocks for five years following her release from prison, ordered to disgorge gains in the amount of $2,731,760.27 and pay prejudgment interest on that amount. Prejudgment interest will begin from November 13, 2002, the date the complaint was filed, and the IRS underpayment rate will apply. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

New York, New York
November 28, 2006

_____
U.S.D.J.

---

each and thus, qualify.